806 F.2d 689
 Unempl.Ins.Rep. CCH 17,102
Jamie E. COKER, Petitioner,
v.
R.A. GIELOW, Chairman; C.J. Chamberlin, Member; J.O.
Crawford, Member; Michael Altmann, Executive
Officer; and United States Railroad
Retirement Board, Respondents.
 No. 85-3864.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 22, 1986.
Decided Dec. 3, 1986.
Rehearing Denied Jan. 5, 1987.
 
 William C. Gosnell (argued), Donati and Gosnell, P.C., Memphis, Tenn., for petitioner.
 Steven A. Bartholow, Deputy Gen. Counsel, Edward S. Hintzke, Asst. Gen. Counsel, Lori A. Watkins (argued), Gen. Atty., Railroad Retirement Bd., Chicago, Ill., for respondent.
 Before MARTIN, GUY and NORRIS, Circuit Judges.
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Claimant, Jamie Coker, appeals from the decision of the Railroad Retirement Board, contending that the Board improperly computed the amount of his annuity. Finding no error in the computations, we affirm.
 
 
 2
 Plaintiff essentially argues (1) that his social security benefit amount of $404.00 granted upon his application at age 65, rather than his previous early retirement award of only $279.00, should have increased his railroad retirement annuity proportionately; and (2) that as a "dual vested employee" he is entitled to receive his railroad annuity without reduction for social security benefits or, in the alternative, at no less than the amount he would have received from both his railroad retirement and social security under the provisions of the Railroad Retirement Act of 1937.
 
 
 3
 The various changes in claimant's annuity computation since the filing of his claim in 1981 are too numerous to set forth and not essential to this appeal. It will suffice to say that claimant's total monthly benefit amount at the time of the final decision from the Railroad Retirement Board (the Board) on October 22, 1984, was $638.07, and he claims his correct amount should range anywhere from $714.40 to $906.60.
 
 I. Factual and Procedural History
 
 4
 Plaintiff last worked for the railroad in 1971 after twenty-three and one-half years of service. By December 31, 1974, he also had earned wages in the requisite number of quarters for coverage under the Social Security Act.
 
 
 5
 In 1971, when Coker terminated his employment with the railroad, he was covered under the Railroad Retirement Act of 1937, 45 U.S.C. Sec. 228a et seq. (amended 1974), which allowed an individual with at least ten years of employment with the railroad and sufficient work to establish eligibility under the Social Security Act, 42 U.S.C. Sec. 401 et seq., to draw benefits under both systems. This situation resulted in higher benefit payments to those qualifying under both systems than were received by those with the same years of work experience, but all under one system.[1] In an attempt to eliminate this dual benefit windfall, Congress passed the Railroad Retirement Act of 1974, 45 U.S.C. Sec. 231 et seq., which fundamentally restructured the railroad retirement system. It established a two-tier system of benefits, the first tier composed of the employee's combined railroad and non-railroad employment figured at social security rates (the equivalent of a straight social security benefit). See Sec. 231b(a). This tier comprises the bulk of the final annuity amount. The second tier provides an additional amount based on railroad service alone. See Sec. 231b(b). Finally, for those employees who qualify under Sec. 231b(h) of the Act, an additional benefit, called a "vested dual benefit," is provided which, in essence, partially compensates those persons who were eligible for dual benefits under the former Act.[2]
 
 
 6
 Coker filed his claim for early railroad retirement benefits in May, 1981 (the month he turned sixty-two), and was awarded an annuity. A few months later, he filed for and began receiving social security benefits of $279.00 per month, which amount was deducted from his railroad annuity. Due to his dissatisfaction with the amount of his benefits, he wrote or called the agency several times to protest their computations.[3] He also revoked his early social security retirement.
 
 
 7
 Plaintiff subsequently challenged the computation of his benefits and on October 18, 1983, a hearing was held. The decision of the referee, dated May 16, 1984, addressed two issues--whether claimant's annuity was subject to earnings deductions, and whether the amount of his annuity had been properly computed. She found that his annuity was subject to deductions for earnings and that his benefit amount was proper. He appealed this decision to the Railroad Retirement Board, informing them that he had reapplied for social security in May, 1984 (the month he turned sixty-five), and was currently drawing $404.00 per month. The Board issued its decision affirming the appeals referee on October 22, 1984, from which claimant takes this appeal pursuant to the provisions of Sec. 231g of the Act.
 
 II. The Railroad Retirement Act of 1974
 
 8
 The legislative history of the Act shows that Congress' purposes in restructuring the 1937 Act were twofold: first, to ensure the fiscal soundness of the railroads and, second, to establish equitable retirement benefits for all railroad employees. The major problem in accomplishing these objectives was that of "dual beneficiaries," those retirees who were eligible for benefits under both the Railroad Retirement Act and the Social Security Act. These beneficiaries caused a proportionately greater drain on the railroad retirement system than on the social security system. The Senate Report specifically found that "were it not for the problem of dual beneficiaries, the railroad retirement system would be almost completely solvent." S.Rep. No. 1163, 93rd Cong.2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News 5702, 5708. Therefore, the Act was intended to phase out these dual benefits in as equitable a manner as possible.
 
 
 9
 Section 231b(h) sets forth the method for computing the allowable dual benefit for those eligible employees specified in that section.[4] Basically, the amount of this "vested dual benefit" is computed by adding the amount of social security benefits to which an individual would have been entitled based solely on his railroad service and those based solely on his non-railroad service, and subtracting an amount based on a combination of both social security wages and railroad compensation effective December 31, 1974. The remaining amount is subject to cost of living increments up to the time of actual retirement, when this benefit amount is frozen. All vested employees retiring after December 31, 1974, receive some amount of dual benefits to compensate for Sec. 231b(m), which mandates full reduction for any monthly benefit payable under the Social Security Act.
 
 
 10
 The annuity amounts payable to all employees retiring after December 31, 1974, are to be computed under Sec. 231b[5] with one possible exception. Section 231b(f)(2), a so-called "grandfather clause," mandates that no employee drawing under the new Act will draw less than he would have been entitled to under the provisions of the Railroad Retirement Act of 1937.
 
 
 11
 This complex mechanism ensures the eventual phase out of dual beneficiaries and brings the annuity entitlement of railroad employees in line with the benefits available to those drawing under Title II of the Social Security Act. While it admittedly distinguishes between former retirees, those with "vested" rights, and those future retirees ineligible for any dual benefit, the Supreme Court has upheld these classifications since railroad retirement benefits, like social security benefits, are not contractual and may be altered or even eliminated by Congress at any time. United States Railroad Retirement Board v. Fritz, 449 U.S. 166, 174, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980). Therefore, no impermissible discrimination results from the elimination of dual benefits for future retirees covered by the Railroad Retirement Act of 1974.
 
 III. Standard of Review on Appeal
 
 12
 Section 8 of the Railroad Retirement Act of 1974 (45 U.S.C. Sec. 231g) incorporates the judicial review provisions of the Railroad Unemployment Insurance Act (Section 5(f); 45 U.S.C. Sec. 355(f)), and thereby specifically provides that "[t]he findings of the Board as to the facts, if supported by the evidence and in the absence of fraud, shall be conclusive." The law is well settled that a decision of the Railroad Retirement Board regarding entitlement to benefits under the Railroad Retirement Act or the Railroad Unemployment Insurance Act is not to be set aside on judicial review if it is supported by substantial evidence in the record and is not based on an error of law. Chandler v. Railroad Retirement Board, 713 F.2d 188, 189 (6th Cir.1983); Ogle v. Railroad Retirement Board, 238 F.2d 233, 234 (6th Cir.1956). Thus, in order to determine whether there has been an error of law resulting in an improper award of benefits to the plaintiff, we are required to engage in an interpretation of the relevant portions of the Railroad Retirement Act of 1974.
 
 
 13
 In connection with this task, we note that Congress has given to the Railroad Retirement Board the responsibility of administering the Act. 45 U.S.C. Sec. 231f. The determination of which individuals are entitled to benefits under the Act, and the amount of those benefits, comprises a major portion of the Board's duties. The United States Supreme Court has stated that "[i]t is by now a commonplace that 'when faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers of the agency charged with its administration.' " Environmental Protection Agency v. National Crushed Stone Ass'n, 449 U.S. 64, 83, 101 S.Ct. 295, 306, 66 L.Ed.2d 268 (1980) (citation omitted). A reviewing court is to be guided by the principle that the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong. E.I. du Pont de Nemours and Company v. Collins, 432 U.S. 46, 97 S.Ct. 2229, 53 L.Ed.2d 100 (1977); Red Lion Broadcasting Co., Inc. v. Federal Communications Commission, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). Therefore, the Board's interpretation should be upheld if it is not fundamentally inconsistent with the language and purpose of the statute. Ford Motor Co. v. NLRB, 441 U.S. 488, 99 S.Ct. 1842, 60 L.Ed.2d 420 (1979); NLRB v. Iron Workers, 434 U.S. 335, 98 S.Ct. 651, 54 L.Ed.2d 586 (1978); Brotherhood of Railroad Trainmen v. Railroad Retirement Board, 410 F.2d 353 (3d Cir.1969).
 
 IV. Plaintiff's Allegations of Error
 
 14
 A. The effect of plaintiff's increased social security on his railroad annuity.
 
 
 15
 We turn now to plaintiff's first assignment of error; namely, that his award of monthly social security benefits of $404.00, rather than the previously determined $279.00, should have resulted in a corresponding increase in his annuity. Section 231b sets out the method for determining an individual's annuity amount. Claimant elected to begin drawing his railroad annuity at age sixty-two rather than waiting until he turned sixty-five. Therefore he suffers an age reduction in his benefit amount as prescribed by statute. The Board's computations show that he has received all cost of living increases to which he was entitled under the Social Security Act (42 U.S.C. Sec. 415(i)) as applied to both his Tier I benefits and his vested dual benefits. Furthermore, Sec. 231b(m) specifically provides that:
 
 
 16
 The annuity of any individual under subsection (a) of this section for any month shall ... be reduced, but not below zero, by the amount of any monthly benefit ... payable to that individual for that month under Title II of the Social Security Act (42 U.S.C. Sec. 401 et seq.).
 
 
 17
 45 U.S.C. Sec. 231b(m).
 
 
 18
 We discern no supportable basis in petitioner's claim that the amount of his social security benefits should affect the amount of his railroad retirement annuity. Rather, the opposite conclusion prevails. His annuity amount was computed under the formula specified in the 1974 Act, and that amount, once established, is clearly subject to full reduction for future social security entitlement. It is this feature of the Act that operates most conclusively to bring railroad annuities in line with those which would have been payable under the social security system, a goal clearly established by the legislative history of the 1974 Act. Therefore, we find claimant's first objection to be without merit.
 
 
 19
 B. Plaintiff's entitlement as a "dual vested employee" under the Act's "grandfather clause."
 
 
 20
 As we understand this portion of claimant's argument, he focuses on Sec. 231b(f)(2) as support for his contention that he is guaranteed an amount not less than he would have been entitled to had he retired under the Railroad Retirement Act of 1937. This section specifies, in relevant part:
 
 
 21
 If, in the case of an individual whose annuity under section 2(a)(1) of this Act began to accrue prior to January 1, 1983, the annuity (before any reduction due to such individual's entitlement to a monthly insurance benefit under the Social Security Act and disregarding any amount provided by subsection (h) of this section) ... is less than the total amount which would have been payable to such individual and his spouse for such month, on the basis of the individual's compensation and years of service, under the provisions of the Railroad Retirement Act of 1937 as in effect on December 31, 1974, ... the annuity of such individual ... shall be increased ... so as to equal such total amount.
 
 
 22
 45 U.S.C. Sec. 23b(f)(2).
 
 
 23
 Addressing this argument, the appeals referee specifically found that claimant would have been entitled to a railroad annuity of $309.00 under the provisions of the 1937 Act. Since this amount was less than his applicable annuity rate of $523.98 figured under the provisions of the 1974 Act, he was awarded the higher amount.
 
 
 24
 Claimant argues for an interpretation of the "grandfather clause" which would allow for payment of not only the 1937 Act amount of $309.00 but accumulated cost of living increases on this amount since 1974 plus his social security benefits, for a total monthly benefit in excess of $900.00. He contends that since this combined sum is greater than his benefit amount under the new Act, he is entitled to the larger amount under this clause.
 
 
 25
 With regard to the argument for accumulation of cost of living increments, the clause specifically provides that the computation be made under "the provisions of the Railroad Retirement Act of 1937 as in effect on December 31, 1974. 45 U.S.C. Sec. 231b(f)(2) (emphasis added). The statutory language clearly restricts the computation to that amount payable as of December 31, 1974, thereby barring allowance for cost of living increases declared subsequent to that date.[6] Therefore, we find this argument without support.
 
 
 26
 Finally, plaintiff urges an interpretation of the "grandfather clause," Sec. 231b(f)(2), which would mandate a computation based on the aggregate of his railroad annuity plus his social security. We note that the Board has interpreted this clause as allowing for consideration of only railroad compensation and years of service, excluding those wages compensable under the social security system.
 
 
 27
 In reviewing the legislative history for clarification of the purpose and effect of this clause, we find an indication of Congressional intent in a statement contained in the Senate Report, explaining that the clause "would insure that no employee retiring within the next eight years will receive less than he would under the formula as it exists today computed under the current limit on creditable compensation."[7] Creditable compensation under the 1937 Act is limited to that paid to employees of "an express company, sleeping-car company or carrier by railroad." 45 U.S.C. Sec. 228a, subsections (a), (h)(1), and (m), amended by 45 U.S.C. Sec. 231 et seq. This statement clearly supports the Board's interpretation of Sec. 231b(f)(2) as requiring that the computation under that clause be limited to the amount payable based on railroad earnings alone.
 
 
 28
 To adopt the interpretation urged by the claimant would allow all employees retiring prior to January 1, 1983, to combine the most favorable elements of both Acts to yield the highest possible annuity. However, the clearly expressed Congressional intent in enacting the Railroad Retirement Act of 1974 was the gradual elimination of dual beneficiaries, with the "grandfather clause" inserted to ensure only that no retiree drawing under the system as combined receives less than he would have drawn in railroad benefits alone under the former Act.
 
 
 29
 After review of claimant's remaining objections to his annuity computation, we find that the conclusions reached by the Board and reflected in the calculation of claimant's benefit amount are supported by a reasonable basis in law. Claimant has been found eligible for and granted a "windfall" benefit under Sec. 231b(h) of the Act in the form of a "vested dual benefit," which he is currently receiving in addition to the Tier I and II benefits provided all retirees under Secs. 231b(a) and (b). Since we find no error of law in the findings of the Board, its decision is AFFIRMED.
 
 
 
 [1]
 For example, if 10 years of either railroad or non-railroad employment would produce a monthly benefit of $300.00, an additional 10 years of the same employment at the same level of creditable compensation would not double that benefit, but would increase it by some lesser amount to say $500.00. If that 20 years of service had been divided equally between railroad and non-railroad employment, however, the social security benefit would be $300.00 and the railroad retirement benefit would also be $300.00, for a total benefit of $600.00. The $100.00 difference constitutes the "windfall" benefit. United States Railroad Retirement Board v. Fritz, 449 U.S. 166, 168 n. 1, 101 S.Ct. 453, 456 n. 1, 66 L.Ed.2d 368 (1980). See generally, S.Rep. No. 1163, 93rd Cong., 2d Sess. reprinted in 1974 U.S.Code Cong. & Admin.News 5702, 5704
 
 
 [2]
 To attain the status of a vested employee, Sec. 231b(h)(1)(A) requires an individual to have:
 (i) rendered service as an employee to an employer, or as an employee representative, during the calendar year 1974, or (ii) had a current connection with the railroad industry on December 31, 1974, or at the time his annuity under section 231a(a)(1) of this title began to accrue, or (iii) completed twenty-five years of service prior to January 1, 1975, and (B) will have (i) completed ten years of service prior to January 1, 1975, and (ii) been permanently insured under the Social Security Act [42 U.S.C.A. Sec. 301 et seq.] on December 31, 1974,
 ....
 Claimant was determined to have a "current connection" with the railroad on December 31, 1974, pursuant to Sec. 231b(h)(1)(A)(ii) and to satisfy the remaining criteria for eligibility for vested dual benefits under this subsection.
 
 
 [3]
 At various points, claimant has protested deductions from his benefits due to his receipt of self-employment income and/or social security benefits, lack of cost of living increases, and benefit cutbacks mandated by the legislature, as well as asserting misapplication and/or misinterpretation of the law by the Agency
 
 
 [4]
 See supra n. 2
 
 
 [5]
 "Section 3 (45 U.S.C. Sec. 231b) specifies the benefits that will be payable to railroad employees who retire after December 31, 1974.... " S.Rep. No. 1163, supra, n. 1, at 5715 (emphasis added)
 
 
 [6]
 "Thus, the guaranty amount derived from the provisions of the 1937 Act is confined to the amount that would have been payable under that Act as of December 31, 1974...." S.Rep. No. 1163, supra, n. 1, at 5735 (emphasis added)
 
 
 [7]
 "Indeed, most career railroad employees retiring in the next several years should receive somewhat more benefits if the bill is enacted than they would have received under the old formula as so computed." S.Rep. No. 1163, supra, n. 1, at 5717