829 F.2d 1126
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Donald M. REYNOLDS, Petitioner,
v.
UNITED STATES of America, RAILROAD RETIREMENT BOARD, Respondent.
 No. 86-4064
 United States Court of Appeals, Sixth Circuit.
 September 25, 1987.
 
 Before NATHANIEL R. JONES, WELLFORD and RALPH B. GUY, Circuit Judges.
 Per Curiam.
 
 
 1
 Petitioner, Donald Reynolds, appeals the denial of a disability annuity under section 2(a)(1)(v) of the Railroad Retirement Act of 1974, 45 U.S.C. Sec. 231a(a)(1)(v) (1983). Reynolds, who is now 55 years of age, was employed as a railroad brakeman from 1972 until 1981. He claims that coronary artery disease has rendered him unable to sit, stand or walk for any length of time, and that he is therefore totally disabled or, at the very least, able to perform only sedentary work. Because we find that the Board's decision to deny benefits is based on substantial evidence in the record, we affirm.
 
 I.
 
 2
 Reynolds filed his application for an annuity on June 16, 1983. Lacking the 20 years of railroad service needed to qualify for a disability annuity based on disability for work in his last railroad occupation, 45 U.S.C. Sec. 231a(a)(1)(iv), appellant had to be rated under the stricter requirement that he be disabled from all work. Id. Sec. 231a(a)(1)(v).
 
 
 3
 On March 30, 1984, the Bureau of Retirement Claims, the initial adjudicating unit of the Board denied appellant's application for benefits. The notice of denial stated in pertinent part:
 
 
 4
 You said you were unable to work because of coronary artery disease and peripheral vascular disease. The medical evidence shows that you had coronary bypass surgery in 1981 and bilateral bypass surgery in 1982 to restore circulation to your legs. It appears you have had good results from your surgeries. The pulses in your legs appear intact. There is no evidence of heart failure or rhythma disturbances. We have determined that your condition is not sufficiently severe to prevent all regular work.
 
 
 5
 J. App. at 30. Appellant requested reconsideration of the initial denial, and upon reconsideration the Bureau of Retirement Claims reaffirmed its decision that Mr. Reynolds was not disabled for all regular substantial gainful work. Further, appellant was found to have the residual functional capacity for medium work activity.
 
 
 6
 On November 20, 1984, Mr. Reynolds appealed the denial of benefits to the Bureau of Hearings and Appeals, the Board's intermediate appellate unit. A hearing was held and on March 26, 1986 the appeals referee issued his decision denying the appellant disability benefits. In arriving at his decision, the appeals referee followed the steps for evaluating disability promulgated by the Social Security Administration and used by the Railroad Retirement Board in making disability determinations. See 20 C.F.R. Sec. 404.1520(a) (1987). Pursuant to the framework provided by these regulations, and in light of the available medical evidence, the referee concluded that 'appellant has a severe impairment which prevents him from performing his past relevant work of brakeman,' but that the impairment does not meet or equal a listed impairment in the regulations. Accordingly, the referee concluded that under the regulations a finding of 'disabled' could not be made without first considering 'other factors including age, education, past work experience, and residual functional capacity . . . to determine if other work can be performed.' J. App. at 6. Upon consideration of these factors the referee concluded that despite appellant's severe impairment he nevertheless retained the residual functional capacity to perform 'light work' as that term is defined in the administrative regulations. See id. Sec. 404.1567(b). Therefore, because appellant remained able to perform light work, the referee concluded that the Medical-Vocational Guidelines found in appendix 2 of the regulations and the corresponding grid-table compelled a finding of 'not disabled' for a person of appellant's age ('closely approaching advanced age'), education ('limited or less'), and previous work experience ('skilled or semiskilled'). See id. Sec. 404.1569 & Subpart P, App. 2 (Table No. 2, Rule 202.11).
 
 
 7
 On May 19, 1986, Mr. Reynolds appealed to the three-member Board itself, and on August 26, 1986, the Board notified appellant that it unanimously affirmed and adopted the decision of the appeals referee. That determination became the final decision of the Board. This appeal followed.
 
 II.
 
 8
 This court has jurisdiction to review a decision of the Railroad Retirement Board under section 8 of the Railroad Retirement Act, 45 U.S.C. Sec. 231g, which incorporates the judicial review provisions of the Railroad Unemployment Insurance Act, 45 U.S.C. Sec. 355(f). The standard a review this court uses in reviewing a decision of the Board is a 'substantial evidence' standard. That is, if the Board's decision is supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, its decision will not be disturbed by this court on appeal. See Coker v. Gielow, 806 F.2d 689, 693 (6th Cir. 1986) cert. denied, 107 S. Ct. 2483 (1987); Chandler v. United States R.R. Retirement Bd., 713 F.2d 188, 189 (6th Cir. 1983) (per curiam).
 
 
 9
 Therefore, the sole issue presented on this appeal is whether substantial evidence exists to support the Board's decision denying appellant disability benefits. Appellant makes three arguments in support of his contention that the denial of benefits was not supported by substantial evidence. First, appellant contends that the appeals referee did not give sufficient weight to the medical opinions of his treating physicians. Second, appellant argues that his own testimony as to the severity of his pain was sufficient by itself to establish disability. Finally, appellant argues that even if the evidence does not establish that he is permanently disabled, he is nevertheless entitled to benefits under the applicable regulations because he can perform only 'sedentary' work. As will be discussed below, these arguments are not persuasive and do not require us to set aside the Board's decision.
 
 A.
 
 10
 Appellant's first argument is that the appeals referee did not accord proper weight to the uncontradicted medical opinion of his two doctors, Drs. Rogers and Grimaudo, as well as the opinion of the chief medical officer of the railroad for which he had worked, Dr. Gallant. Specifically, appellant places a lot of emphasis on the form submitted to the Board by Dr. Grimaudo on June 13, 1983 in which the doctor stated that appellant was a 'cardiac cripple' and unable to undertake gainful employment. J. App. at 119. Appellant also relies on the assessment of his cardiologist, Dr. Rogers, that appellant's poor exercise tolerance and functional aerobic impairment 'probably justify total and permanent disability for him.' J. App. at 137. Finally, appellant points to a short letter from Dr. Gallant, the chief medical officer of appellant's employer, stating that upon review of appellant's medical records it was his opinion that appellant was 'unable to work at this time because of a medical condition.' J. App. at 125.
 
 
 11
 Normally, in determining disability, a treating physician's report is entitled to deference. See Duncan v. Secretary of Health & Human Services, 801 F.2d 847, 855 (6th Cir. 1986). However, 'an acceptable medical opinion as to disability must contain more than a mere conclusory statement that the claimant is disabled. It must be supported by clinical or laboratory findings.' Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981). Congress has made the determination of disability the prerogative of the Board, not the treating physician, and accordingly the Board is not bound by a physician's conclusory statements. See King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984); Peppers v. Railroad Retirement Board, 728 F.2d 404, 406 (7th Cir. 1983).
 
 
 12
 In this case, in addition to the statements referred to above, the referee had available the medical reports of Dr. Harry Mack, an internist who examined the appellant twice at the request of the Board. According to Dr. Mack, appellant had good results from his bypass surgery and should be capable of work requiring minimal to moderate exertion. Further, the referee had available two letters from appellant's cardiologist, Dr. Rogers, and two medical assessments made by Dr. Rogers, on dates seven months apart, of appellant's ability to do work-related activities. While Dr. Rogers stated in one of the letters that appellant 'probably' was permanently disabled, he also stated that appellant's blood pressure was under control with medication. Moreover, in the second assessment of appellant's ability to work, Dr. Rogers found that appellant could lift up to 10-15 pounds without restriction and occasionally up to 20 pounds, and further that he could stand or walk 4 hours out of an 8 hour day and do so for 2 hours without interruption. Finally, the referee had available the testimony of the appellant himself. This testimony established that appellant still experiences occasional chest pains but that these can be relieved by sitting down and relaxing; that medication has his blood pressure pretty well under control; that he performs various household duties such as cooking, washing dishes, and vacuuming; that he occasionally carries a five gallon can of kerosene, weighing more than 20 pounds, for a portable heater; and that he goes fishing once a week in the summer.
 
 
 13
 In light of this evidence, the appeals referee properly discounted the statement of Dr. Grimaudo as conclusory. The suggestion that appellant is a 'cardiac cripple' was not supported by any clinical findings and was contradicted by Dr. Rogers' assessments and by Dr. Mack's reports. Further, the referee was correct in not according significant weight to Dr. Gallant's statement that appellant should not be working because of a medical condition. That statement was not based on a physical examination of appellant, but rather on a review of appellant's medical records. Further, the review of the records was made in February 1984 and so was prior to the examinations made by both Dr. Mack and Dr. Rogers.
 
 
 14
 Accordingly, the appeals referee properly weighed the available evidence, and did not commit error by refusing to give as much weight as appellant would like to certain statements by Drs. Grimaudo, Gallant, and Rogers.
 
 B.
 
 15
 Appellant next argues that his own testimony as to the severity of his subjective symptoms and the pain he experiences was sufficient by itself to establish disability. This argument is without merit and does not mandate disturbing the conclusion of the appeals referee as adopted by the Board.
 
 
 16
 First of all, the complaints of pain that appellant now raises are not credible in light of the medical evidence and appellant's own testimony at the hearing. As early as March 1982, Dr. Rogers reported that appellant had 'no chest discomfort,' and pain was not listed by appellant on his application as one of the alleged disabling impairments he had. At the hearing appellant did not testify to pain of a severe nature, but rather described the pain as a dull aggravating ache. In fact, there is no indication that appellant is taking any medication for treatment of pain.
 
 
 17
 In addition since appellant's case was heard and decided in 1986, his subjective complaints of pain are subject to the temporary evidentiary standards set forth in 42 U.S.C.A. Sec. 423(d)(5)(A) (West Supp. 1987) and discussed by this court in Duncan v. Secretary of Health and Human Services, 801 F.2d 847 (6th Cir. 1986).[1] In Duncan we concluded that the temporary standard calls for a two-pronged analysis:
 
 
 18
 First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.
 
 
 19
 Id. at 853.
 
 
 20
 The new standard, outlined in Duncan, has not been met here. While there is objective medical evidence of appellant's underlying medical condition, there is no objective medical evidence to confirm the severity of appellant's alleged pain, nor has it been established that appellant's condition is of such severity that it could reasonably be expected to produce the alleged disabling pain.
 
 C.
 
 21
 Appellant's final argument is that even if the evidence does not establish that he is permanently disabled, he is nevertheless entitled to disability benefits because the evidence establishes that his residual functional capacity enables him to perform only 'sedentary work,' not 'light work' as found by the appeals referee. Therefore, citing the administrative regulations, appellant argues that the appeals referee's reliance on section 202.00 of the Medical-Vocational Guidelines (which applies when a claimant can perform only 'light work') was incorrect as was his use of Table No. 2. Instead, appellant concludes, the referee should have relied on section 201.00 (which applies when a claimant can perform only 'sedentary work') and corresponding Table No. 1, which indicate that for a person of appellant's age, education, and previous work experience a finding of disability is required. See 20 C.F.R. Part 404, Subpart P, App. 2 (Sec. 201.00, Table No. 1). This argument is also without merit and does not require setting aside the Board's decision.
 
 
 22
 The administrative regulations, relied on by the appeals referee, define 'light work' in the following way:
 
 
 23
 Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. . . .
 
 
 24
 20 C.F.R. Sec. 404.1567(b). 'Sedentary work' is one step below 'light work' in terms of exertion, and is used to describe those jobs that require the least amount of physical exertion:
 
 
 25
 Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking or standing are required occasionally and other sedentary criteria are met.
 
 
 26
 Id. Sec. 404.1567(a).
 
 
 27
 In this case substantial evidence exists to support the appeals referee's decision that appellant remained capable, despite his severe physical impairment, to perform light work. As mentioned previously, the medical assessments made by Dr. Rogers of appellants ability to do work-related activities indicated that appellant could lift up to 10-15 pounds without restriction and occasionally up to 20 pounds, and further that he could stand or walk 4 hours out of an 8 hour day and could do so for 2 hours without interruption. In addition, the report of Dr. Mack indicated that appellant could do work requiring 'minimal to moderate physical exertion.' Finally, appellant's own testimony, including his statement that he occasionally carries a 5 gallon can of kerosene weighing more than 20 pounds for a portable heater, suggests that appellant is capable of performing light work as defined in the regulations.
 
 
 28
 We therefore conclude that substantial evidence supports the Board's determination that appellant is not totally and permanently disabled but retains a residual functional capacity to perform light work. Accordingly, the decision of the Railroad Retirement Board is AFFIRMED.
 
 
 
 [1]
 While these standards, by their terms, apply to determinations made under the Social Security Act, they may be utilized by analogy in determining disability under the Railroad Retirement Act