936 F.2d 572
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Kenneth R. FINNISSION, Petitioner,
v.
RAILROAD RETIREMENT BOARD, Respondent.
 No. 90-3830.
 United States Court of Appeals, Sixth Circuit.
 July 1, 1991.
 
 Before DAVID A. NELSON and ALAN E. NORRIS, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This case comes before us on a petition for review of the Railroad Retirement Board's denial of a claim for a disability annuity under Sec. 2(a)(1)(v) of the Railroad Retirement Act, 45 U.S.C. Sec. 231a. (a)(1)(v). Finding the Board's decision supported by substantial evidence, we shall deny the petition.
 
 
 2
 * Kenneth R. Finnission, the petitioner, was born on March 17, 1946. After graduating from high school, he worked as a railroad engineer for approximately nine and a half years. On January 26, 1982, he slipped on an oily surface in the engine compartment of a train, injuring his lower back. Mr. Finnission has not worked since his fall. On January 1, 1983, Dr. George R. Schoedinger performed a lumbar diskectomy on Mr. Finnission at L4-L5 and a disc exploration at L5-S1.
 
 
 3
 On March 13, 1985, Mr. Finnission applied to the Board's Bureau of Retirement Claims for a determination of employee disability. The Bureau denied the application, noting that although the back injury prevented Mr. Finnission from engaging in heavy industrial employment, he was not "totally and permanently disabled from all work." Finnission appealed the Bureau's decision to an appeals referee; the referee upheld the denial of benefits.
 
 
 4
 The referee's decision was appealed to the three-member Railroad Retirement Board. The Board remanded the case to the referee for findings on the effect of medications on Mr. Finnission's ability to work. The referee determined that the medications would not impair Mr. Finnission's ability to perform unskilled, sedentary work. The Railroad Retirement Board upheld the referee's decision, one member dissenting. This appeal followed.
 
 II
 
 5
 Mr. Finnission argues (1) that the Board's decision ought to be reversed because substantial evidence does not support denial of his application; (2) that the Board erred in applying the regulations that define disability; and (3) that the Board erroneously concluded that there are suitable employment opportunities for which he is qualified.
 
 
 6
 A decision of the Railroad Retirement Board "is not to be set aside on judicial review if it is supported by substantial evidence in the record and is not based on an error of law." Coker v. Gielow, 806 F.2d 689, 693 (6th Cir.1986), cert. denied, 482 U.S. 906 (1987) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Chandler v. Railroad Retirement Board, 713 F.2d 188, 189 (6th Cir.1983) (citation omitted). When reviewing Railroad Retirement Board decisions, appellate courts may rely, by way of analogy, on regulations and judicial decisions involving the Social Security Act. Id. at 190 (citations omitted).
 
 
 7
 Three pieces of evidence support the Board's conclusion that Mr. Finnission retained the capacity to perform unskilled sedentary work. Dr. Schoedinger concluded that he could not perform heavy industrial tasks, but recommended that he seek a lighter form of work. In a report of April 9, 1985, another physician, Dr. Gary Bray, concluded that "[t]here are many occupational [sic] he probably would qualify for." Finally, Mr. Finnission's treating physician, Dr. Mitchell Wicker Jr., concluded in November of 1986 that Mr. Finnission was capable of lifting 20 pounds and was capable of sitting for four hours a day and standing for four hours a day, provided that he did not have to stand for more than half an hour at a time or sit for more than an hour at a time.
 
 
 8
 Mr. Finnission contends that the Board's decision is not supported by substantial evidence because he suffers from constant, debilitating pain and because Dr. Wicker concluded that use of the prescription pain medication Darvocet would hinder Mr. Finnission's ability to respond to rapid changes in his environment, thus preventing him from being gainfully employed. We reject this contention.
 
 
 9
 A claimant's "subjective allegations of disabling pain are insufficient by themselves to support a claim for benefits." Sizemore v. Secretary of Health & Human Services, 865 F.2d 709, 713 (6th Cir.1988). In order to demonstrate that pain constitutes a disabling condition, a claimant must show that
 
 
 10
 "[t]here [is] evidence of an underlying medical condition and (1) there [is] objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition [is] of a severity which can reasonably be expected to give rise to the alleged pain." Id. (quoting Duncan v. Secretary of Health & Human Services, 801 F.2d 847, 853 (6th Cir.1986)).
 
 
 11
 Mr. Finnission's allegations of pain do not meet this test. Although some of Dr. Wicker's medical reports indicate that Mr. Finnission complained of severe pain, others state that his pain had greatly diminished or that he felt only chronic low back pain. Mr. Finnission, moreover, testified that until October of 1987 he was only taking Anacin and Bufferin for his pain. Dr. Wicker himself never stated that Mr. Finnission's pain would cause any qualification of the November 1986 assessment.
 
 
 12
 Dr. Wicker's opinion that Darvocet would prevent Mr. Finnission from being gainfully employed does not warrant reversal of the Board's decision. As the appeals referee noted, Dr. Wicker's own reports do not mention any side effects during the time he was prescribing Darvocet. Dr. Wicker stated that side effects associated with Darvocet would preclude gainful employment because of a decrease in Mr. Finnission's ability to respond to rapid changes in his environment--but unskilled sedentary labor does not normally require an employee to respond to rapid changes in environment.
 
 
 13
 Mr. Finnission also alleges that he has an impairment listed at 20 C.F.R. Part 404, Subpart P, App. 1, 1.05(C), and it was therefore improper for the Board to consider his age, education, and work experience. This section lists the following disorder:
 
 
 14
 "C. Other vertebrogenic disorders (e.g., herniated nucleus puplosus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
 
 
 15
 1. Pain, muscle spasm, and significant limitation of motion in the spine; and
 
 
 16
 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss."
 
 
 17
 Although Mr. Finnission suffers from some of these symptoms, he introduced no evidence showing that he suffers from muscle spasm, motor loss, or sensory and reflex loss. On the contrary, Dr. Schoedinger concluded that Mr. Finnission did not suffer from these symptoms.
 
 
 18
 Mr. Finnission argues that the Board failed to show that sedentary work exists in rural Southeastern Kentucky. The Board, however, need only show that such work exists in the national economy. That few jobs may exist in Mr. Finnission's part of the country is irrelevant. See Chandler, 713 F.2d at 190. (citation omitted).
 
 
 19
 Accordingly, the petition for review is DENIED.