940 F.2d 659
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Thomas DUFFY, Petitioner-Appellant,
v.
RAILROAD RETIREMENT BOARD, Respondent-Appellee.
 No. 90-4105.
 United States Court of Appeals, Sixth Circuit.
 Aug. 6, 1991.
 
 Before BOYCE F. MARTIN, Jr. and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner-appellant Thomas Duffy seeks review of a decision of the Railroad Retirement Board which denied his claim for a disability annuity under the Railroad Retirement Act. The issues in this case are (1) whether the appeals referee erroneously rejected uncontroverted evidence of petitioner's mental impairment, and (2) whether the hypothetical questions asked of the vocational consultant by the appeals referee were comprehensive enough, considering the subsequent psychological and psychiatric reports, to elicit testimony constituting substantial evidence of the availability of jobs in the economy for a person with petitioner's limitations. For the reasons that follow, we reverse and remand.
 
 I.
 
 2
 Petitioner Thomas Duffy was born on April 24, 1944, has completed high school and attended Ohio University for one year. He was a brakeman, conductor, and yard foreman for sixteen years until his right eye was surgically removed because of a melanoma. The surgery left petitioner with poor peripheral vision and diminished depth perception, limitations that required his discharge from his employment. The parties agree that petitioner can no longer perform his past work.
 
 
 3
 On July 22, 1986, petitioner filed an application for a disability annuity under the Railroad Retirement Act of 1974, 45 U.S.C. Sec. 231a-v. The claim was initially denied and denied on reconsideration. Petitioner appealed to the agency's Bureau of Hearings and Appeals, and on January 21, 1988, an appeals referee conducted an evidentiary hearing. Approximately a month after the hearing, petitioner submitted a report from Dr. Lowe, a psychologist, and on April 18, 1988, the appeals referee issued a decision that affirmed the denial of petitioner's claim.
 
 
 4
 At the time of the hearing before the appeals referee, neither of the reports from Drs. Lowe or Strayer was available. Petitioner, however, testified at the hearing that he took Valium because he got depressed, and the question of his depression and its symptoms was explored to some extent during this testimony.
 
 
 5
 Present at the hearing was Charles Loomis, a vocational expert, to whom certain hypothetical questions were asked concerning the availability of jobs in the economy for someone in petitioner's physical and mental condition. Specifically, the vocational expert was asked for his opinion of the jobs available to someone who could not drive, who had limited depth perception and peripheral vision, who could not operate dangerous or moving equipment, and who, because of mood disorder or depression, could not work in frequent contact with the public. The vocational expert, after factoring out jobs that required contact with the public, estimated that a large number of jobs were available in the medium, light, and sedentary job categories.
 
 
 6
 At the request of petitioner's attorney, the appeals referee allowed the subsequent filing of a psychological report by Dr. Lowe, and he considered the report in his initial decision of April 18, 1988. Finding Dr. Lowe's report largely conclusory and internally inconsistent, the appeals referee determined that his hypothetical questions to the vocational expert had accurately described petitioner's true psychiatric condition and its attendant limitations, and, therefore, the appeals referee could rely on the validity of the vocational expert's hearing testimony as originally given.
 
 
 7
 On appeal, the Railroad Retirement Board vacated the original decision, directed the appeals referee to obtain a psychiatric examination of the petitioner, and remanded the case for reconsideration. Dr. Marilynn Strayer, a psychiatrist, examined the petitioner and filed a report on April 5, 1989. On June 30, 1989, the appeals referee, without conducting another hearing, issued a second decision in which he again concluded that there were a significant number of jobs in the economy available to petitioner. Because a second hearing was not held, the appeals referee could not have appraised the vocational expert of the findings and opinions of Drs. Lowe and Strayer. The Railroad Retirement Board affirmed the appeals referee's second decision, and this timely appeal followed.
 
 II.
 A.
 
 8
 The judicial review of Railroad Retirement Board decisions is provided for in 45 U.S.C. Sec. 355(f), which states that "[t]he findings of the Board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive." The scope of review of Railroad Retirement Board decisions is similar to that used in reviewing decisions of the Secretary of Health and Human Services in social security matters, that is, the substantial evidence test.
 
 
 9
 The law is well settled that a decision of the Railroad Retirement Board regarding entitlement to benefits under the Railroad Retirement Act or the Railroad Unemployment Insurance Act is not to be set aside on judicial review if it is supported by substantial evidence in the record and is not based on an error of law. Chandler v. Railroad Retirement Board, 713 F.2d 188, 189 (6th Cir.1983); Ogle v. Railroad Retirement Board, 238 F.2d 233, 234 (6th Cir.1956).
 
 
 10
 Coker v. Gielow, 806 F.2d 689, 693 (6th Cir.1986), cert. denied, 482 U.S. 906 (1987). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).
 
 B.
 
 11
 Petitioner argues that the appeals referee erroneously rejected the findings of Drs. Lowe and Strayer in concluding that petitioner retained the residual functional capacity to perform certain kinds of work available in the economy. Dr. Lowe, consulted for the purpose of this litigation, gave his opinion that petitioner was "unable to sustain day after day performance in a work setting." The appeals referee discounted this finding because he determined that Dr. Lowe's report was "largely conclusory, inconsistent with the appellant's answers, and in some cases contradictory...." Indeed, Dr. Lowe's report seems to be mainly the reiteration of petitioner's complaints followed by an "In summary ..." paragraph that uncritically restates the complaints in language customarily used by psychologists. The report is riddled with observations which appear to be inconsistent with Dr. Lowe's conclusions concerning petitioner's ability to work.
 
 
 12
 Dr. Lowe reports that petitioner's chief complaint is, "I just don't like to get out. I'm happier by myself. I don't like to talk with people." Petitioner also told the psychologist that his depression was "not always very bad ...," that he had no suicidal thoughts or wish to be dead, and that he had little anxiety. Petitioner also denied being anxious about leaving home and reported that he did not fear strangers. He told Dr. Lowe that he had had no difficulties in the past working with other people and that he did not know if he would have such problems in the future. When asked if he felt that life was hopeless, petitioner replied, "Sometimes I do but not as a whole." He denied being constantly depressed or having suicidal thoughts.
 
 
 13
 Dr. Lowe concluded that petitioner had insight into his problems, did not tend to blame others, had no hallucinations or delusions, no feelings of persecution, and no history of nervous breakdown or mental disease. He then found petitioner totally disabled because of major depression and extreme stress from, among other things, "suicidal ideation." Under these circumstances the appeals referee was justified in discounting Dr. Lowe's conclusions.
 
 
 14
 Dr. Strayer's report and diagnosis appear to have been fully accepted by the appeals referee, who noted the psychiatrist's assessment of petitioner's ability to engage in work-related activities and concluded, based on that assessment, "that while the appellant's mental impairment causes some limitations, it would not preclude work functions." In her report, Dr. Strayer diagnosed petitioner as suffering from major depression but noted that he had no suicidal ideation, that he had gained twenty-four pounds in the last year, that he cooked for himself occasionally, that he read the newspaper, and entertained friends who visited him. Dr. Strayer further reported that petitioner told her he was not lonely or bored, he thought his life was "okay," and that he was not really unhappy. Moreover, petitioner reported having no fears, phobias, or anxiety attacks. The doctor found no evidence of thought disorder with hallucinations or delusions and no evidence that petitioner was overtly paranoid.
 
 It is true, as petitioner points out, that
 
 15
 [t]he medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference. This is true, however, only if the treating physician's opinion is based on sufficient medical data. Ultimately, of course, the determination of disability is the prerogative of the Secretary, not the treating physician.
 
 
 16
 Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985) (citations omitted). Neither Dr. Lowe nor Dr. Strayer were treating physicians, and, although their diagnoses of major depression are the same, their reports are contradictory in terms of the work disability resulting to petitioner from his illness. Dr. Lowe believes petitioner to be completely disabled from work, while Dr. Strayer's more specific assessment of work-related activities shows that petitioner's ability to function in a work setting is, for the most part, "seriously limited but not precluded."
 
 
 17
 The appeals referee did not reject the uncontradicted findings of the medical experts in this case. Instead, he accepted the findings of Dr. Strayer and rejected the inconsistent conclusions of Dr. Lowe.
 
 C.
 
 18
 Petitioner argues that the Railroad Retirement Board failed to carry its burden of proving that a substantial number of jobs existed in the economy which petitioner, despite his limitations, could perform. The appeals referee relied on the testimony of a vocational expert to whom he propounded hypothetical questions concerning the availability of jobs for persons with petitioner's physical impairments. After testifying that large numbers of jobs were available for persons with physical limitations such as petitioner's, the vocational expert was asked to assume that petitioner also had a psychiatric or psychological impairment that limited his ability to deal with strangers or to come into frequent contact with the public. On that assumption, the vocational expert testified that large numbers of jobs would still exist. The vocational expert, however, was not presented with some of the important limitations mentioned by Dr. Strayer in her assessment of petitioner's ability to engage in work-related activities. Dr. Strayer's assessment rated petitioner's ability to use judgment; deal with work stress; function independently; maintain attention and concentration; understand, remember and carry out complex job instructions; behave in an emotionally stable manner, and demonstrate reliability as "seriously limited but not precluded."
 
 
 19
 On cross-examination, after the appeals referee's hypothetical question had been asked, petitioner's attorney had the following colloquy with the vocational expert:
 
 
 20
 ATT: Well, of course, I mean if a psychiatrist were to say that this man was suffering from a severe depression and defined that depression as not only difficulty with dealing with people but difficulty in focusing attention and keeping records or acting under orders or dealing with superiors, would that affect his ability to do any of these jobs.
 
 
 21
 VOC: If that were, yeah, if that were determined to be severe, yes, it would.
 
 
 22
 In so answering, the vocational expert testified that his opinions would be altered if limitations having to do with petitioner's ability to focus his attention, keep records, act under orders, or deal with superiors were present in the case. We note that those are the kinds of limitations that eventually came to light in Dr. Strayer's assessment.
 
 We have held that
 
 23
 [s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a "hypothetical" question, but only "if the question accurately portrays [plaintiff's] individual physical and mental impairments."
 
 
 24
 Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir.1987) (quoting Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir.1984)). See also Sias v. Secretary of Health and Human Services, 861 F.2d 475, 481 (6th Cir.1988). The hypothetical question asked of the vocational expert in this case did not accurately portray the full range of petitioner's mental impairments because they were not then known. Because the hypothetical question was incomplete in material respects, the vocational expert's answer to it cannot constitute substantial evidence that jobs are available in the economy for one with petitioner's impairments.
 
 III.
 
 25
 Because the Railroad Retirement Board relied on a hypothetical question asked of the vocational expert in order to establish the availability of work petitioner could perform, and because that hypothetical question was faulty due to material omissions concerning petitioner's mental impairments, we REVERSE the decision of the Railroad Retirement Board and REMAND with instructions for a rehearing consistent with this opinion.