**Thomas J. MCDONNELL, Petitioner,**

v.

**UNITED STATES RAILROAD RETIREMENT BOARD, Respondent.**

No. 03–1657.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 12, 2003.

Decided Dec. 8, 2003.

Rehearing Denied Feb. 9, 2004.

---

Thomas J. McDonnell, Chicago, IL, for Petitioner.

Stanley J. Shuman, Railroad Retirement Board, Bureau of Law, Chicago, IL, for Respondent.

Before HBAUER, MANION, and ROVNER, Circuit Judges.

## ORDER

Thomas McDonnell appeals a reduction of his monthly annuity from the Railroad Retirement Board. McDonnell was granted annuities by both the Board and the Social Security Administration. Upon learning that McDonnell was receiving social security benefits, the Board recalculated its award and determined that a 1974 amendment to the Railroad Retirement Act required it to reduce its annuity dollar-for-dollar by the amount of McDonnell's social security benefits. After McDonnell complained about this reduction, the Board reconsidered the award and discovered that he was owed a "vested dual benefit"—this is money he is permitted to receive both as railroad retirement and social security benefits—and restored part of the money it had previously revoked. On appeal, McDonnell argues that this is insufficient and that his social security benefits should not serve to reduce his annuity from the Board at all. Because the 1974 amendment to the Railroad Retirement Act undermines McDonnell's argument, we affirm the Board's award.

McDonnell is an attorney who was employed in the railroad industry for approximately 14 years during his nearly 50-year career. After he retired McDonnell applied to the Railroad Retirement Board in April 2000 for an annuity under the Railroad Retirement Act, 45 U.S.C. § 231 et seq. On his application McDonnell stated that he would not apply for social security benefits within the next 90 days. The Board awarded him a monthly annuity of $1,217.20. Only 55 days after filing with the Board, McDonnell then applied for social security benefits. He was awarded a monthly social security annuity of $805.00. The Board learned of this award almost immediately and informed McDonnell that it was reducing his railroad annuity by $805.00—the exact amount of his social security benefits.

McDonnell appealed this reduction through the Board's administrative process claiming that he was entitled to a "vested dual benefit" on the basis of his railroad service prior to 1975. The Board determined that he was indeed entitled to a vested dual benefit of $125.25, and both increased his monthly annuity and paid him back benefits for the months he had not received his vested dual benefit. McDonnell again appealed to the Board claiming that, because of the dual benefit, the Board should pay him the annuity amount it originally calculated without any offset for his social security award. The Board affirmed its award, and McDonnell now appeals to this court.

We have jurisdiction over McDonnell's appeal pursuant to 45 U.S.C. § 231g, which adopts the judicial review provisions

provided in 45 U.S.C. § 355(f). We will affirm the Board's decision if it "is supported by substantial evidence and has a reasonable basis in law." *Holman v. United States R.R. Ret. Bd.*, 253 F.3d 975, 978 (7th Cir.2001). Reasonable interpretations by the Board of the Railroad Retirement Act and its own regulations are entitled to deference. *Id.*

Some legislative background about the railroad retirement system provides context for McDonnell's claim. Before 1974, persons like McDonnell who qualified for both railroad retirement benefits and social security benefits could collect in full from both sources. *Steiger v. United States R.R. Ret. Bd.*, 761 F.2d 1428, 1429 (9th Cir.1985). This created two significant problems. First, the system was inequitable–individuals who split their careers between the railroad industry and other industries (and who therefore qualified to receive benefits under both systems) earned greater benefits than those who worked for the same number of years either exclusively in the railroad industry or exclusively outside of it. *See Coker v. Gielow*, 806 F.2d 689, 691 (6th Cir.1986). Second, these dual benefits payments threatened the financial stability of the entire railroad retirement system, which was projected to become insolvent by 1981. *See* S.Rep. No. 93–1163 (1974), *reprinted in* 1974 U.S.C.C.A.N. 5702, 5708; *United States R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 168–69, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980); *Frock v. United States R.R. Ret. Bd.*, 685 F.2d 1041, 1047 (7th Cir.1982) ("Congress, faced with a system in severe financial distress, sought to put a final end to dual benefits.").

As a result of these problems, Congress completely overhauled the Railroad Retirement Act in 1974. The amended Act provides that a beneficiary's railroad retirement annuity is calculated by considering both railroad and non-railroad employ-ment. *See* 45 U.S.C. § 231b(a)(1). In turn, this annuity must be reduced on a dollar-for-dollar basis by any social security benefit the beneficiary receives:

> The annuity of any individual under subsection (a) of this section for any month shall . . . be reduced, but not below zero, by the amount of any monthly benefit . . . payable to that individual for that month under Title II of the Social Security Act.

45 U.S.C. § 231b(m). *See also Coker*, 806 F.2d at 694. Congress, however, determined that it would be inequitable to cut off dual benefits entirely for those individuals who had already retired—and were receiving dual benefits—or for those who had worked for a sufficient amount of time to be legally entitled to dual benefits in 1974. *See* S. Rep. 93–1163, at 5704–05. The amended law therefore provided that employees who were already retired in 1974 would be unaffected by the change. *Fritz*, 449 U.S. at 171. In contrast, employees like McDonnell who had worked long enough to qualify for dual benefits in 1974 but were not yet retired would have their benefits partially preserved by a grandfather clause in 45 U.S.C. § 231b(h). *See Gebbie v. United States R.R. Ret. Bd.*, 631 F.2d 512, 513 (7th Cir.1980) (superceded by statute on other grounds).

The portion of § 231b(h) relevant to McDonnell's claim states that a person is entitled to a vested dual benefit provided that he: (1) either worked as a railroad employee in 1974 or had a "current connection" with the railroad industry on December 31, 1974; (2) had at least ten years of railroad service prior to January 1, 1975; and (3) was permanently insured under the Social Security Act on December 31, 1974. 45 U.S.C. § 231b(h)(1). The parties do not dispute that McDonnell satisfies these criteria. The vested dual benefit under § 231b(h)(1) is calculated by adding: (1) the social security benefits to

which the beneficiary would have been entitled based *solely on his railroad employment before 1975,* plus (2) the social security benefits to which he would have been entitled based *solely on his non-railroad employment before 1975,* minus (3) the social security benefits to which he would have been entitled based on the *combined total of his railroad and non-railroad employment before 1975* (all benefits are calculated using the social security laws in effect on December 31, 1974). *See* 45 U.S.C. § 231b(h)(1); *Coker,* 806 F.2d at 692. The benefit awarded under § 231b(h)(1) is a "full" vested dual benefit because a beneficiary is paid the full amount of dual benefits he had accrued as of 1974 (employees meeting different criteria receive a "reduced" vested dual benefit). *See Fritz,* 449 U.S. at 172–73 (describing full and reduced dual benefits).

When McDonnell's claim is considered in light of the 1974 amendment to the Railroad Retirement Act, it seems clear that the Board handled his application properly. Congress acted explicitly to eliminate future accruals of dual benefits to railroad employees. *See* S. Rep. 93–1163, at 5705 ("accrual of future dual benefit rights is prohibited under the bill"). Section 3(m) of the Railroad Retirement Act reduces McDonnell's railroad annuity by the exact amount of his social security benefits. *See Coker,* 806 F.2d at 694. Section 3(h) then mandates a corresponding increase in his annuity, but only to the extent of the vested dual benefits he had already accrued in 1974, with some adjustment for cost-of-living increases. *See* 45 U.S.C. § 231b(h)(1), (5) (all references to terms of service used in calculating the increase are "prior to January 1, 1975").

AFFIRMED.